STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**May 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**J.C.,**
**Respondent Below, Petitioner**

**vs.)  No. 19-1168** (Ritchie County 19-DV-67)

**J.M.,**
**Petitioner Below, Respondent**


# MEMORANDUM DECISION


Petitioner J.C., by counsel Mark Hobbs, appeals the November 21, 2019, order of the Circuit Court of  Ritchie County that denied her appeal of the Family Court of Ritchie County's order granting a domestic violence protective order against petitioner and in favor of respondent J.M., who is petitioner's niece. Respondent, by counsel Michael Farnsworth, Jr., responds in support of the circuit court's order.

The Court has considered the parties' briefs and record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision of the circuit court is reversed and the case is remanded to the circuit court with instructions to order that the domestic protective order at issue in this case, and any references to that order, be purged from the file maintained by any law enforcement agency and that the files maintained by the lower courts be sealed and not opened except upon order of the circuit court when such is in the interest of justice.

Respondent J.M. petitioned for an emergency protective order against her aunt, petitioner J.C., from the Magistrate Court of Ritchie County for events occurring on the property where respondent and her family were residing.[1] That property is part of the Joe-Lynn Trust/Robert Jackson's Estate Trust (the "Trust") created by respondent's deceased father who was also petitioner's brother. When the magistrate court granted respondent an emergency protective order against petitioner, litigation involving petitioner and respondent was ongoing in the Circuit Court of Ritchie County regarding the identity of the Trust's trustees and beneficiaries.

---

[1] On September 24, 2019, petitioner obtained a "temporary personal safety order" against respondent's husband, Mr. M., from the Kanawha County Magistrate Court. The parties dispute whether petitioner was granted a permanent personal safety order against Mr. M.

1

The Family Court of Ritchie County held a final hearing on respondent's protective order petition on October 21, 2019. Testifying at the hearing were respondent, petitioner, and West Virginia State Police Trooper Evans, the law enforcement officer who authenticated the investigating officer's (West Virginia State Police Senior Trooper J.T. Blevins's) report, which was admitted into evidence. Trooper Blevins's narrative of the events of September 22, 2019, is set forth in summary form in the following five paragraphs:

On Sunday, September 22, 2019, Trooper Blevins ("the trooper") was dispatched to the property where respondent and her family were residing to address a report of a verbal altercation. When the trooper arrived at the scene, respondent told him that an altercation was occurring behind a barn on the property. As the trooper walked toward the barn, he heard loud, aggressive yelling from respondent's husband, "Mr. M.," and then a loud thud. As he came around the barn, the trooper saw Mr. M. standing at the driver's side door of petitioner's car and yelling at petitioner. The trooper also saw a large dent in the driver's side door of petitioner's car. Mr. M. "angrily" advised the trooper to get petitioner off his property. The trooper saw that Mr. M.'s utility terrain vehicle ("UTV") was blocking the front of petitioner's car and that an all-terrain vehicle ("ATV") was blocking the back of petitioner's car. The trooper told Mr. M. to take his UTV and return to his house while the trooper spoke with petitioner. Mr. M. was "acting belligerent" and initially ignored the trooper's instructions. Mr. M. repeated that he wanted petitioner off his "f—king property." The trooper yelled at Mr. M. and said that because Mr. M. had blocked the front of petitioner's car with the UTV, and Mr. M.'s/respondent's adult son[2] (the "son") had blocked the back of petitioner's car with the ATV, petitioner could not move her car. In response, Mr. M. started the UTV, floored the gas petal, and spun his tires thereby throwing gravel toward the trooper and petitioner's car. The trooper called for backup; a sheriff's deputy arrived thereafter.

The trooper then spoke with petitioner who said she was on the property to access the barn which was located some distance from respondent's house. Petitioner said she had heard rumors that personal property belonging to the Trust, including an excavator, had been sold. Petitioner said that she never intended to see Mr. M. or to get out of her car. Instead, she merely intended to take a picture of the area "under the barn" where the excavator had been stored. Petitioner said that when she arrived at the barn, Mr. M. blocked the front of her car with his UTV, and Mr. M.'s son struck the back of her car with his ATV when he slid to a stop behind her. Petitioner said that Mr. M. reached through her driver's side window, grabbed her left arm, twisted it, and took her cell phone. The trooper observed a slight redness on petitioner's left arm. Petitioner then said that Mr. M. yelled at her to get out of her car and kicked and punched the driver's side door of her car. The trooper noted a large shoe print on the driver's side door of petitioner's car. Petitioner said she felt "threatened for her life." The trooper ensured that petitioner's phone was returned to her and asked petitioner to leave the property. Petitioner complied.

Thereafter, the trooper and the deputy walked to respondent's home and spoke with Mr. M. and respondent. The trooper said that Mr. M. continued to be belligerent, yelled at the officers, paced back and forth, and threw his arms around. Mr. M. told the trooper that he was in his front yard shooting guns when he saw petitioner's car going toward the barn. Mr. M. said he rode toward

---

[2] The son is employed as a deputy sheriff for Ritchie County.

the car on his UTV, that petitioner stopped, pulled down her window and attempted to poke him with her phone. Mr. M. said that he took petitioner's phone and that petitioner drove off toward the barn at about thirty miles per hour. Mr. M. said he had grandchildren in the yard where he was shooting guns, so he followed petitioner to the barn and blocked her in with his UTV. Mr. M. admitted to Trooper Blevins that he kicked petitioner's car door with his foot.

The trooper's report notes that petitioner is "75 years old, 5'0" tall, and weighs approximately 146 pounds," and that Mr. M. is in his forties, is "6'5" tall, and weighs approximately 400 pounds." The report further notes (1) that following the incident at the barn, Mr. M. was arrested for misdemeanor domestic assault and misdemeanor destruction of property; (2) that the estimate to repair the damage to petitioner's car was $1,250.00; and (3) that the Ritchie County Prosecutor stated that nothing prohibited petitioner from being on the property where respondent was living or from checking on the Trust's property.

Finally, the trooper's report provides that he obtained video surveillance footage of some of the events of September 22, 2019. The trooper describes the video as showing a UTV cross the front yard of the property going in the direction of the property's driveway. The trooper explained that the driveway enters the property and then forks in two directions: one fork goes toward the house, and the other fork goes down over a hill to a barn. The video shows petitioner driving toward the barn at "what appears to be a reasonable speed for a private driveway." The video also shows (1) respondent's son run by the camera to retrieve an ATV; and (2) a UTV following behind petitioner's car at a high rate of speed. The video then shows petitioner arriving at the barn, and Mr. M. on the UTV catching up to petitioner. The trooper noted that the video did not show any children in the driveway leading to or near the barn. The trooper, using Google Maps, later determined that the barn is 229 feet away from the front yard of the home in which respondent and her family are residing.

At the family court hearing in this case, respondent was the sole witness on her own behalf. Thus, neither Mr. M. nor respondent's son testified at the hearing. Regarding the day of the incident at the barn, respondent testified that she, her husband, her son, and others were outside shooting when petitioner pulled into the driveway. She said her husband, Mr. M., jumped on his UTV and stopped petitioner near a fork in the driveway. She said petitioner waived her phone at her husband and, therefore, her husband took the phone from petitioner. She also said that her husband asked petitioner to leave the property but, instead of leaving, petitioner "fl[ew] to the barn" on the property in her car. Respondent testified that her husband followed on his UTV, and that respondent's son jumped on his ATV and also drove to the barn. Respondent claimed that, at the barn, petitioner backed into the ATV on which her son was riding, and then pulled forward into the UTV on which her husband was riding. Respondent admitted that her husband kicked petitioner's car and that he took petitioner's phone from petitioner. She also testified that the police were called and, when they arrived at the scene, the UTV was in front of petitioner's car and the ATV was behind petitioner's car.

Importantly, during respondent's testimony before the family court, she never said she was afraid of petitioner or that petitioner made her fear for her safety. Instead, respondent repeatedly said that she just wanted petitioner "to leave [her] alone" and that it was "an issue" when respondent showed up. Respondent did testify that petitioner backed up into her son's ATV, but

she did not claim that she was afraid for her son or that her son or the ATV were harmed in any way. Respondent also did not testify that she was afraid for her husband's safety. Instead, she admitted that her husband was very angry, that he was yelling at petitioner, and that he kicked in petitioner's car door.

Petitioner testified to the family court that she heard rumors that heavy equipment stored "under the barn" on her brother's/decedent's property, where respondent and her family were residing, was missing. Petitioner said that, on September 22, 2019, she was visiting Ritchie County and, on the "spur of the moment," she decided to drive by the barn to see if an excavator owned by her deceased brother was still there. She said she did not think anyone would see her driving to the barn given the separate driveway to the barn and the lay of the land. Petitioner intended to take a picture of the area under the barn no matter what was there. She denied that Mr. M. stopped her at the split in the driveway. She testified that after she arrived at the barn, Mr. M. blocked the front of her car with the UTV, and that respondent's son blocked the back of the car with the ATV. She said respondent's son hit her car with the ATV when he blocked her in. She stated that, at the time, she had her car window open to take the picture and that Mr. M. reached into the car through the open window, grabbed her left arm, and wrenched the phone out of her hand. Petitioner testified that she rolled the window up and that petitioner's husband pounded on the windows and kicked the car door as he screamed at her to get out of her car. She further testified that Mr. M.'s father arrived at the scene and tried to get Mr. M. to stop striking petitioner's car. Finally, petitioner testified that the police arrived and told Mr. M. and his son to stop blocking in petitioner's car.

At the conclusion of the hearing, the family court granted a final protective order against petitioner and in favor of respondent dated October 21, 2019. The family court found that petitioner committed the following acts: "Stalking in violation of West Virginia Code §61-2-9a(a)"; and "Repeated credible threats of bodily injury knowing or having reason to know that the threats cause reasonable fear for safety in violation of West Virginia Code §53-8-4(a)(3)." Specifically, the family court found that,

> [Petitioner] drove her vehicle in a manner that caused [*respondent*] *to be fearful that family members would be injured or run over by [petitioner's] vehicle*. These events happened on September 22, 2019 in Ritchie County WV. The testimony indicated that family members of [respondent] attempted to make [petitioner] leave the property and [petitioner] ran into a 4-wheeler and a side[-]by[-]side with her vehicle.

(Emphasis added.)

Petitioner appealed the family court's order to the Ritchie County Circuit Court. Before the circuit court, petitioner's counsel argued that: (1) the family court ignored or chose not to give any weight to Trooper Blevins's report; (2) petitioner never threatened respondent with any bodily injury or imminent danger; (3) respondent was merely an observer or a witness to what happened at the barn; (4) respondent likely sought a protective order against petitioner because Mr. M. was charged with criminal conduct for his actions at the barn against petitioner and because petitioner obtained a domestic violence petition against petitioner's husband; and (5) during the family court hearing, respondent never said that petitioner perpetrated violence upon her.

4

Respondent's counsel responded as follows. First, a "clearly erroneous" standard of review applies to the circuit court's review of the family court's findings of fact. Second, the family court admitted Trooper Blevins's report into evidence and referred to it during the family court hearing. Third, Trooper Blevins's findings do not address how respondent felt about petitioner's actions or whether those actions placed her in fear.

The circuit court stated that it had reviewed the family court transcript and found that the evidence was presented before the family court supported the conclusion that respondent could have perceived that petitioner was a threat to herself or to her son based upon the contact between petitioner's car and the son's ATV.

In a brief order, the circuit court denied relief finding that petitioner failed to show by a preponderance of the evidence that the family court's findings of fact were clearly erroneous or that its conclusions of law were an abuse of discretion. Accordingly, by order entered November 18, 2019, the circuit court refused petitioner's appeal and ordered that respondent's protective order remain in full force and effect until its April 18, 2020, expiration date.[3]

Petitioner filed her notice of appeal with this Court on December 23, 2019. Due to the Covid-19 pandemic, the time to perfect the appeal was extended to June 12, 2020.

"Upon an appeal from a domestic violence protective order, this Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syl. Pt. 1, *John P.W. on Behalf of Adam and Derek W. v. Dawn D.O.*, 214 W. Va. 702, 591 S.E.2d 260 (2003); *see also* W. Va. Code § 48-27-510(d) ("The standard of review of findings of fact made by the family court is clearly erroneous and the standard of review of application of the law to the facts is an abuse of discretion standard.").

On appeal, petitioner argues that the circuit court abused its discretion when it affirmed the family court's order granting respondent a domestic violence protective order. Petitioner contends that both the family court and the circuit court ignored the statements and evidence contained in Trooper Blevins's report. Petitioner points out that the trooper's view of the scene as well as his review of the videotaped evidence indisputably shows that she did not cause or threaten any harm to respondent or respondent's family. Petitioner also asserts that there is nothing in the record, including the respondent's testimony, to show she placed anyone in fear for their safety. Neither Mr. M. nor respondent's son, both of whom would seem to be direct and material witnesses to petitioner's actions, testified before the family court. Petitioner concludes that the evidence shows that Mr. M was the aggressor and that she was the victim.

In effect, petitioner argues (1) that respondent did not bear her burden of proof before the lower courts, (2) that the family court erred in granting respondent a domestic violence protective

---

[3] Although the domestic violence protective order against petitioner expired on April 18, 2020, we address that order on appeal because records of domestic violence protective orders are maintained by law enforcement agencies after such orders have expired.

order, and (3) that the circuit court erred in affirming the domestic violence protective order. In response, respondent highlights that the family court's ruling was based on all the evidence before it and, therefore, concludes that the circuit court did not abuse its discretion in affirming the protective order.

Based on our review of the record on appeal, we agree with petitioner and, therefore, conclude that the circuit court abused its discretion in affirming the family court's order granting respondent a domestic violence protective order against petitioner. As noted above, in that protective order, the family court found that, "[petitioner] drove her vehicle in a manner that caused [*respondent*] *to be fearful that family members would be injured or run over by* [*petitioner's*] *vehicle*[.]" (Emphasis added). However, the recording of the family court hearing clearly shows that respondent never testified that she was afraid for her own safety on the day in question. Instead, respondent, in her testimony before the family court, repeatedly stated that she just wanted petitioner to "leave her alone." As for Mr. M. and his son, they did not appear at the family court hearing, let alone testify that they were in reasonable apprehension of any physical harm from petitioner. Nor did Mr. M. or his son seek a protective order against petitioner. To the contrary, the evidence showed that Mr. M. grabbed petitioner's phone out of her hand and kicked her car, and that both Mr. M. and his son were blocking in petitioner's car when she apparently struck respondent's son's vehicle. Respondent presented no evidence before the family court that, as a result of petitioner's actions, her husband or son were injured, that the UTV or ATC sustained any damage, or that either man feared for his safety due to petitioner's actions.

In light of the relevant law, the record on appeal bolsters our conclusion that both the family court and the circuit court erred. First, West Virginia Code § 48-27-305 provides that,

A petition for a protective order may be filed by:
(1) A person seeking relief under this article for herself or himself;
(2) An adult family or household member for the protection of the victim or for any family or household member who is a minor child or physically or mentally incapacitated to the extent that he or she cannot file on his or her own behalf, or
(3) A person who reported or was a witness to domestic violence and who, as a result, has been abused, threatened, harassed or who has been the subject of other actions intended to intimidate the person.

Respondent appears to have sought a protective order under either §§ 48-27-305(1) or - 305(2). Under § 48-27-305(1), respondent could seek a protective order for herself. However, to be granted such an order, respondent had to show that petitioner committed one of the acts enumerated in West Virginia Code § 48-27-202. That section provides:

"Domestic violence" or "abuse" means the occurrence of one or more of the following acts between family or household members . . . :

(1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;
(2) Placing another in reasonable apprehension of physical harm;

(3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts;

(4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; and

(5) Holding, confining, detaining or abducting another person against that person's will.

Here, the evidence of record does *not* show that petitioner (1) caused physical harm to respondent; (2) placed respondent in reasonable apprehension that she would be physically harmed; (3) created in respondent a *fear of physical harm* by harassing, stalking, abusing, or threatening respondent given that respondent never testified that she was afraid of petitioner; (4) sexually assaulted or sexually abused  respondent; or (5) held, confined, detained, or abducted respondent. Hence, respondent failed to show she was entitled to a domestic violence protective order under § 48-27-305(1).

Under § 48-27-305(2), respondent could have sought a protective order "for the protection of the victim or for any family or household member who is a *minor child* or *physically or mentally incapacitated to the extent that he or she cannot file on his or her own behalf*." (Emphasis added.) However, respondent's husband and adult son were not children, and there was no evidence that either the husband or the son were "physically or mentally incapacitated to the extent that [they could not seek a protective order on their] own behalf[.]" Thus, respondent clearly failed to introduce evidence showing that she was entitled to a protective order under § 48-27-305(2).

Accordingly, we find that the family court erred in granting respondent a protective order against petitioner, and that the circuit court erred in affirming the family court's order.

For the foregoing reasons, the decision of the circuit court is reversed and the case is remanded to the circuit court with instructions to order that the domestic protective order at issue in this case, and any references to that order, be purged from the file maintained by any law enforcement agency and that the files maintained by the lower courts be sealed and not opened except upon order of the circuit court when such is in the interest of justice.

Reversed and remanded with instructions.

**ISSUED:** May 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton